UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LUIS ADRIAN CRUZ-TORRES (A# 035-602-759),

Petitioner,

v.

CENTRAL VALLEY ANNEX,

Respondent.

No. 1:26-cv-07913 DC SCR

FINDINGS & RECOMMENDATIONS

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. This matter was referred to the undersigned by operation of Local Rule 302 and 28 U.S.C. § 636(b)(1).

**I. Factual and Procedural History**

Petitioner is a native and citizen of Cuba who last entered the United States on March 12, 2009, at Miami, Florida, when he was extradited from Costa Rica and paroled into the United States for federal prosecution. ECF No. 10 at 15 (Form I-213). On July 31, 2009, Petitioner was convicted in the U.S. District Court for the Southern District of Florida of conspiracy to possess with intent to distribute in excess of five kilograms of cocaine in violation of 21 U.S.C. § 846 and sentenced to a term of imprisonment of eighty-seven (87) months. Id. at 21-26 (Criminal Case Judgment). On January 21, 2015, an immigration judge ("IJ") ordered Petitioner removed from the United States to Cuba pursuant to 8 U.S.C. §§ 1182(a)(2)(A)(i)(II) (convicted of an act

relating to a controlled substance) and 1182(a)(2)(C) (illicit trafficker in any controlled substance. Id. at 50-53 (Notice to Appear); id. at 56-57 (removal order). Petitioner did not appeal. Id. at 57. On January 27, 2015, Department of Homeland Security ("DHS") officials released Petitioner on an Order of Supervision ("OSUP"). ECF No. 10 at 58-61.

On or about April 7, 2026, Petitioner was arrested in Miami, Florida for felony illegal dumping pursuant to Florida Statutes § 403.413(6)(c). Id. at 73-74. On or about May 30, 2026, DHS detained Petitioner after his release from state custody. Id. at 84 (Form I-200). On June 3, 2026, Immigration and Customs Enforcement ("ICE") revoked Petitioner's OSUP pursuant to 8 C.F.R. § 241.13(i) based on his arrest. Id. at 86-88. Officials afforded Petitioner an initial informal interview pursuant to 8 C.F.R. § 241.13(i)(3). Id. at 89. Also on June 3, 2026, officials served Petitioner with a Warning for Failure to Depart, a Notice of Removal to Mexico, and a Notice of Failure to Comply with his removal pursuant to 8 C.F.R. § 241.4(g). Id. at 91-95. On August 16, 2026, Petitioner was transferred to Central Valley Annex, where he remains detained. ECF No. 1 at 1.

Petitioner initiated this action in the Southern District of Florida on September 28, 2026. ECF No. 1. On September 29, 2026, the assigned District Judge granted Respondent's motion to transfer and transferred the action to this judicial district. ECF No. 5. Petitioner seeks release from immigration detention so that he can continue his treatment for prostate cancer. ECF No. 1 at 6. Petitioner attached an email from his treating Physician Assistant dated August 5, 2026, that explains Petitioner underwent a prostatectomy on September 4, 2025, and has had "significant side effects" since that require periodic follow-up visits and monitoring. ECF No. 1-1 at 1. Petitioner also attached the surgeon's operative report for that surgery. Id. at 5-11.

Respondent opposes the petition and argues that Petitioner cannot raise his conditions of confinement claim in habeas. ECF No. 10 at 7. As to legality of Petitioner's detention, Respondent argues that Petitioner's noncooperation with his removal to Mexico has extended the "removal period," during which detention is mandatory, pursuant to 8 U.S.C. § 1231(a)(1)(C). Id. at 3-5. Respondent adds that Petitioner's removal is foreseeable as Mexico has accepted "thousands of Cuban removals in recent fiscal years." Id. at 5. Respondent submitted the

declaration of Deportation Officer F. Moradi Kouchi ("Moradi Kouchi Decl."), who states "ICE is diligently pursuing Petitioner's removal from the United States, but Petitioner is failing to cooperate with ICE's removal efforts." Id. at 12, ¶ 18.

**II. Legal Standards**

The detention of noncitizens who have been ordered removed from the United States is governed by 8 U.S.C. § 1231(a). "In particular, § 1231(a)(6) provides that after a 90-day 'removal period,' a noncitizen 'may be detained' or may be released under terms of supervision." Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022). After this 90-day removal period has elapsed, ongoing detention is only authorized for "four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" Arteaga-Martinez, 596 U.S. at 578–79 (quoting 8 U.SC. § 1231(a)(6)).

The Supreme Court examined the constitutional limits of detention under 8 U.S.C. § 1231(a)(6) in Zadvydas, describing as "obvious" the "serious constitutional problem arising out of a statute that, in these circumstances, permits an indefinite, perhaps permanent, deprivation of human liberty without any" procedural "protection[s.]" 533 U.S. at 692. To avoid serious constitutional problems, Zadvydas read an implicit due process limitation into the immigration statute governing the detention of noncitizens subject to a final order of removal. The Supreme Court reasoned that "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. As a result, "once [a noncitizen's] removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Id. at 699. To establish a uniform standard for determining when ongoing detention crosses constitutionally acceptable limits, the Court recognized a presumptively reasonable six-month period of detention. Id. at 701. If a noncitizen "provides a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id.

"Numerous courts have held, however, that the burden-shifting scheme of Zadvydas is only applicable to those noncitizens who had been detained and never released following a final order of removal." Ruiz-Acosta v. Cent. Valley Annex, No. 1:26-CV-04371-DAD-JDP (HC), 2026 WL 1846727, at *2 (E.D. Cal. June 26, 2026) (quoting Martinez v. Bondi, No. 1:25-cv-01633-EFB (HC), 2025 WL 3650477, at *3 (E.D. Cal. Dec. 16, 2025)). Where, as here, Petitioner was issued a final order of removal, detained, and subsequently released and then re-detained, "it is [ICE's] burden to show a significant likelihood that the [noncitizen] may be removed." Escalante v. Noem, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025); see also Roble v. Bondi, 803 F.Supp.3d 766, 772-73 (D. Minn. Aug. 25, 2025) ("[T]he regulations at issue in this case place the burden on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future."); Abuelhawa v. Noem, 811 F.Supp.3d 847, 860 (S.D. Tex. Oct. 16, 2025) ("[U]pon revocation of release, the Government bears the burden to show a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."); Nguyen v. Hyde, 788 F.Supp.3d 144, 149-150 (D. Mass. June 20, 2025); Vu v. Noem, No. 1:25-cv-01366-KES SKO (HC), 2025 WL 3114341, at *5 (E.D. Cal. Nov. 6, 2025).

**III. Analysis**

In the petition, Petitioner raises only a conditions claim seeking release to continue his outside prostate cancer treatment. ECF No. 1 at 6. Given Petitioner's pro se status, that the petition references both Petitioner's removal order and the government's attempted third-country removal to Mexico (id. at 2), and that Respondent has fully briefed the applicable 8 U.S.C. § 1231(a) detention issues, the undersigned construes the petition as also seeking relief pursuant to Zadvydas. See United States v. Qazi, 975 F.3d 989, 992–93 (9th Cir. 2020) ("It is an entrenched principle that pro se filings however inartfully pleaded are held to less stringent standards than formal pleadings drafted by lawyers. We are specifically directed to construe pro se pleadings liberally. This duty applies equally to pro se motions and with special force to filings from pro se inmates.") (internal quotation marks and citations omitted).

### A. Petitioner is Not Subject to 8 U.S.C. § 1231(a)(1)(C)

Petitioner has an order of removal to Cuba dated January 21, 2015, and did not appeal that ruling. The IJ's removal order shifted his detention to § 1231(a) and triggered the start of the 90-day removal period, which has long since lapsed. Accordingly, Petitioner's detention is governed by 8 U.S.C. § 1231(a)(6).

Respondents' core argument – that Petitioner's refusal to acquiesce to removal to a third country where an IJ has not ordered him removed constitutes a failure to cooperate with his removal such that his continued detention is permitted under 8 U.S.C. § 1231(a)(1)(C) – has been consistently and repeatedly rejected by judges within the Ninth Circuit. See Suarez v. Chestnut, No. 1:26-cv-05147-EJD, 2026 WL 2547116, at *2 (E.D. Cal. Aug. 28, 2026) ("Section 1231(a)(1)(C) does not authorize the continued detention of an individual so that the Government may obtain his consent to be removed to a third country he has not been afforded the opportunity to challenge."); Garcia v. Warden, Central Valley Annex, No. 1:26-cv-04659-DJC-JDP, 2026 WL 2254380, at *2 (E.D. Cal. Aug. 4, 2026) ("Indeed, district courts have repeatedly found that similarly situated petitioners – Cuban nationals whom the Government is attempting to remove to Mexico against their will – have met their initial [Zadvydas] burden, especially because the current standing agreement with Mexico appears to be conditioned on the consent of the noncitizen.") (collecting cases); Obando Vargas v. Blanche, et al., No. 1:26-CV-05343-DAD-AC (HC), 2026 WL 2056618, at *2 (E.D. Cal. July 16, 2026) ("Respondents' argument appears to be that, because petitioner is not agreeing to voluntarily depart to a country he is not from and is under no legal obligation to go to, he may be detained indefinitely. This argument is frivolous[.]").

As in those cases, none of Respondent's bases for invoking § 1231(a)(1)(C) here withstand scrutiny. First, Respondent cites the June 3, 2026, Warning for Failure to Depart Form, which advised Petitioner of the government's authority to extend the removal period pursuant to § 1231(a)(1)(C). Among the listed requirements—typewritten in a box checked "Other"—is that Petitioner "must comply with removal to *any country willing to accept you*." ECF No. 10 at 93 (emphasis added). This requirement plainly exceeds the scope of § 1231(a)(1)(C). That

provision allows the government to extend the 90-day removal period when a noncitizen fails to cooperate with his "removal *subject to an order of removal.*" Petitioner has no order of removal to Mexico. "Section [1231(a)(1)(C)] does not authorize the continued detention of an individual so that the Government may obtain his consent to be removed to a third country he has not been afforded the opportunity to challenge." Suarez, 2026 WL 2547116, at *2; see also Garcia, 2026 WL 2254380, at *3 ("To adopt the Government's position on the use of detention to strong-arm third-country removals would not only undermine the consent required in those removals but also sanction the use of detention to coerce otherwise unavailable deportations.").

Second, Respondent's reliance on Pelich v. INS, 329 F.3d 1057 (9th Cir. 2003), Lema v. INS, 341 F.3d 853 (9th Cir. 2003), and Diouf v. Mukasey, 542 F.3d 1222 (9th Cir. 2008) is misplaced. All of those cases "set forth a narrower rule, inapplicable here, that the noncitizen's failure to cooperate with removal to the country *to which he was ordered removed* tolls the 90-day [detention] period." Couso Mendez v. Warden California City Det. Facility, No. 1:26-CV-4977-TLN-JDP, 2026 WL 2192274, at *2 (E.D. Cal. July 29, 2026), report and recommendation adopted sub nom. Couso M. v. Warden, California City Det. Facility, No. 1:26-CV-4977-TLN-JDP, 2026 WL 2216125 (E.D. Cal. July 31, 2026) (emphasis added). Respondent also cites to Medhani v. Noem, No. 3:26-CV-0594-CAB-JLB, 2026 WL 809914 (S.D. Cal. Mar. 24, 2026), which is distinguishable for the same reason. The Court there denied the petition of an Eritrean national who obstructed his removal to Eritrea and expressly noted a lack of evidence "that Respondents intend to remove Petitioner to a third country." Medhani, 2026 WL 809914, at *3.

Respondent also maintains that ICE's service on Petitioner of a Notice of Failure to Comply pursuant to 8 C.F.R. § 241.1(g) triggered the extension of the removal period. ECF No. 10 at 3. That regulation reads:

> [T]he removal period is extended under [8 U.S.C. § 1231(a)(1)(C)] if the [noncitizen] fails or refuses to make timely application in good faith for travel or other documents necessary to the [noncitizen's] departure or conspires or acts to prevent the [noncitizen's] *removal subject to an order of removal*. [DHS] will provide such [a noncitizen] with a Notice of Failure to Comply, as provided in paragraph (g)(5) of this section, *before the expiration of the removal period.*

8 C.F.R. § 241.4(g)(1)(ii) (emphasis added). This provision is plainly inapplicable to Petitioner.

Respondent does not allege that he has refused to cooperate with his "removal subject to an order of removal," i.e., removal to Cuba. Moreover, the regulation contemplates a lack of cooperation "*before* the expiration of the removal period"—a period that, in Petitioner's case, expired more than a decade ago.

For all of these reasons, the undersigned rejects Respondent's argument that Petitioner's refusal to cooperate with his third-country removal to Mexico triggered the tolling provision at § 1231(a)(1)(C). Accordingly, Petitioner is detained pursuant to § 1231(a)(6).

**B. Petitioner is Entitled to Release**

Based on Petitioner's January 2015 release on OSUP and re-detention in May 2026, the undersigned finds that the burden shifting framework of Zadvydas does not apply to this case. See Vu, 2025 WL 3114341, at *5. Therefore, Respondent has the burden of demonstrating that there is a significant likelihood that the Petitioner may be removed to Mexico.

Respondent argues that Petitioner's detention is reasonable under Zadvydas because removal "is feasible once Petitioner cooperates with basic travel and departure requirements." ECF No. 10 at 6. This argument functionally repeats Respondent's baseless assertion that the removal period is tolled under § 1231(a)(1)(C). Respondent has not provided the Court with any evidence tending to show that Mexico is willing to accept Petition even if such travel and departure requirements were met.

For instance, Respondent states that "ICE is diligently pursuing Petitioner's removal," Moradi Kouchi Decl. ¶ 18, ECF No. 10 at 12, but does not describe those efforts. Respondent failed to provide the Court with a copy of any agreement with the government of Mexico to accept Petitioner. Moreover, Respondent's representation that thousands of Cubans have been removed to Mexico in recent fiscal years does not demonstrate that Petitioner's removal is significantly likely. "[S]tanding alone, the fact that removals to a particular country 'are in fact occurring,' says nothing about whether Mexico will accept [Petitioner] any time soon." Arenado-Borges v. Bondi, No. 2:25-cv-02193-JNW, 2025 WL 3687518, at *4 (W.D. Wash. Dec. 19, 2025); see also Ruiz-Acosta, 2026 WL 1846727, at *3 (finding same where "respondents failed to indicate what steps the government has taken to effectuate petitioner's removal to Mexico or that

Mexico is likely to accept this petitioner specifically.”).[1] Accordingly, Petitioner’s detention is unlawful and he must be released. See Hoac v. Becerra, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *7 (E.D. Cal. July 16, 2025) (allowing release upon a finding that removal was not reasonably foreseeable).

For all these reasons, the undersigned recommends that the § 2241 petition be granted and that Respondent be ordered to release Petitioner immediately.[2] Respondent may place Petitioner on the same conditions of supervision in place prior to his re-detention in May 2026. See Zadvydas, 533 U.S. at 700 (holding that a noncitizen’s release “may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions.”).

**CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner’s application for a writ of habeas corpus (ECF No. 1) be GRANTED.

2. Respondent be directed to immediately release Petitioner LUIS ADRIAN CRUZ-TORRES (A# 035-602-759) on the same conditions of release in place at the time of his re-detention in May 2026.

3. Respondent be directed to file a notice of compliance within three (3) days of any order adopting these findings and recommendations.

4. Respondent be prohibited from re-detaining Petitioner without first complying with 8 U.S.C. § 241.13.

5. The Clerk of the Court be directed to:

   a. Serve the Central Valley Annex with a copy of any order of release; and

---

[1] Respondent also states that it “appears Petitioner has not asserted fear of removal to Mexico,” id. at 6, but does not maintain that the government offered him a meaningful opportunity to apply for withholding of removal and protection under the Convention Against Torture as to that country. Under Ninth Circuit authority, “[f]ailing to notify individuals who are subject to deportation that they have a right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process.” Andriasian v. INS, 180 F.3d 1033, 1041 (9th Cir. 1999).

[2] In the interests of judicial economy, the undersigned finds it unnecessary to address Petitioner’s conditions claim.

b. Enter judgment in Petitioner's favor and close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 13, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE